# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER HARRIS,

    Petitioner,

v.                                                               No. 07-CV-178 MCA/ACT

JAMES JANECKA, Warden,

    Respondent,

and

GARY KING, Attorney General
of the State of New Mexico,

    Additional Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Petitioner Christopher Harris's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody. [Doc. No. 1]. Petitioner filed his Application on February 1, 2007. The Respondents filed an Answer, with accompanying Exhibits, on June 6, 2007, together with a Motion to Dismiss and a Memorandum in Support. [Doc. Nos. 8, 9 and 10]. The Petitioner filed a Response to the Motion to Dismiss. [Doc. No. 20]. Respondent filed a Reply. [Doc. No. 23]. The United States Magistrate Judge, having reviewed the Application, the Answer, the accompanying Exhibits, the Motion to Dismiss, the Petitioner's Response, the Respondent's Reply and the relevant law, recommends that the Application for a Writ of Habeas Corpus be DENIED ON THE MERITS.

PROPOSED FINDINGS

PROCEEDINGS AND PLEADINGS

1. Petitioner Christopher Harris ("Harris") contends that during his trial proceedings he was denied his right to effective assistance of counsel. Harris is incarcerated at the Lea County Correctional Facility.

2. Following a jury trial in the Ninth Judicial District Court of the State of New Mexico, Harris was found guilty of one count of first degree murder in violation of NMSA 1978 § 30-2-1(A)(1) and one count of tampering with evidence in violation of NMSA 1978 § 30-22-5.

3. Harris was sentenced to life imprisonment for the murder conviction and one and a half years for the tampering with evidence conviction. An additional one year was added to the sentence for tampering with evidence for three prior felony convictions pursuant to NMSA 1978 § 31-18-17.

4. In his federal habeas petition, Harris identifies seven separate errors relating to his ineffective assistance of counsel claim: 1) failure to investigate the underlying facts of his case; 2) failure to present witnesses to support his intoxication defense; 3) failure to present expert testimony on his intoxication defense; 4) failure to discover and disclose a conflict of interest; 5) failure to impeach prosecution witnesses; 6) failure to pursue pretrial motions; and, 7) cumulative effect of counsel's errors.

5. On June 6, 2007, Respondent filed his Answer [Doc. No. 10] and a Motion to Dismiss [Doc. No. 8] with supporting memorandum [Doc. No. 9]. Respondent contends that Harris fails to state a meritorious constitutional claim cognizable under 28 U.S.C. §2254. Respondent argues that the state court's determination that Harris was competently represented at his state court trial did not result in a decision that is contrary to, or involves an unreasonable application of, clearly established

federal law, nor did it result in an unreasonable determination of the facts in light of the evidence presented. Harris filed a Response. [Doc. No. 20]. Respondent filed a Reply. [Doc. No. 23]. The motion is now fully briefed and ready for ruling.

## FACTUAL AND PROCEDURAL HISTORY

6. On October 3, 2000, Harris and the victim, Chad Smith, spent the day drinking and smoking marijuana with two other men, Cash McKinney and Sam McDowell. Harris alleges that Smith made several racial slurs directed to him that day. Sometime between 4:00 p.m. and 5:00 p.m., Harris became ill, vomited, went home, and went to bed. At approximately 8:00 p.m., Smith, McKinney and Mc Dowell knocked at Harris's door and asked him to go to McDowell's house to continue partying. Harris declined the invitation and then went back to sleep.

7. Harris woke up sometime after midnight on October 4, 2000, and asked his wife to drive him to McDowell's house so he could confront Smith about racial slurs Smith had made the previous day. Before leaving his house, Harris armed himself with a knife from his kitchen. After initially entering McDowell's house and approaching the victim, Harris went outside with Smith, McKinney, and McDowell. After some discussion, Harris stabbed Smith in the back, got back into the car being driven by his wife, and left the scene. Harris was arrested a short time later.

8. Harris was represented by Assistant Public Defender Charles Plath. Following a jury trial, Harris was convicted of first degree murder and tampering with evidence. [Doc. No. 10, Ex. A]. Still represented by the Public Defender, Harris timely appealed his conviction to the New Mexico Supreme Court on the grounds that the evidence failed to support a conviction of first degree murder, that the state district court erred when it failed to instruct the jury on the defense of intoxication, and that the state district court erred when it failed to instruct the jury on voluntary

manslaughter. [Doc. No. 10, Ex. C].  In a decision filed on July 10, 2002, the New Mexico Supreme Court rejected Harris's contentions and affirmed the convictions.  [Doc. No. 10, Ex. I].

9.  On August 8, 2003, Attorney Brian Pori (who currently represents Harris) filed an Amended Petition for a Writ of Habeas Corpus in the Ninth Judicial District Court on Harris's behalf, contending that the proceedings leading to his conviction violated his state and federal constitutional rights to due process and to the effective assistance of conflict-free counsel at all critical stages of the proceedings. [Doc. No. 10, Ex. K].  Harris made essentially the same claims in his state habeas petition as he is making in this federal habeas petition.  *Id.*  An Order Summarily Dismissing Petition for Writ of Habeas Corpus was filed by the District Court on November 21, 2003. [Doc. No. 10, Ex. L.].

10.  Harris then filed a Petition for a Writ of Certiorari to the Ninth Judicial District Court with the New Mexico Supreme Court alleging that the district court erred in summarily dismissing his petition without conducting an evidentiary hearing. [Doc. No. 10, Ex M].  On February 9, 2004, the Court granted the Writ and remanded the case to the Ninth Judicial District Court for an evidentiary hearing. [Doc. No. 10, Exs. O and P].

11.  A three-day evidentiary hearing was held in the Ninth Judicial District Court on October 26, 2005, December 9, 2005, and April 21, 2006.  Following the hearing, both Harris and Respondent filed Proposed Findings of Fact and Conclusions of Law. [Doc. No. 10, Exs. S and T]. On August 11, 2006, the Court filed detailed Findings of Fact and Conclusions of Law, and on August 18, 2006, filed an Order Denying Petition for Writ of Habeas Corpus. [Doc. No. 10, Exs. U and V].

12. Following the denial of his Petition for a Writ of Habeas Corpus, Harris filed a Petition for Writ of Certiorari to the Ninth Judicial District Court with the New Mexico Supreme Court. [Doc. No. 10, Ex. W]. The petition was denied on October 19, 2006. [Doc. No. 10, Ex. X]. Harris filed a Motion for Rehearing from the Denial of a Petition for a Writ of Certiorari on October 31, 2006. [Doc. No. 10, Ex. Y]. That motion was denied by the New Mexico Supreme Court on November 29, 2006. [Doc. No. 10, Ex. Z]. Harris filed this federal habeas corpus petition on February 21, 2007, contending that he was denied his right to the effective assistance of counsel. [Doc. No. 1].

## DISCUSSION

### EXHAUSTION OF REMEDIES

13. As an initial matter, the Court determines whether Harris meets the exhaustion requirement of 28 U.S.C. §2254(b). Respondent does not contest that Harris has met the exhaustion requirement nor does he waive any argument as to this issue. The Court concludes that the claims raised in this federal proceeding were exhausted.

### DEFERENCE TO STATE COURT ADJUDICATION

14. Harris's petition is analyzed under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). An application for writ of habeas corpus brought by an individual in custody pursuant to a judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. 28 U.S.C. §2254(d). This means that a federal court is precluded from granting habeas relief except in the narrow circumstances described in §2254(d), and that this Court must apply a presumption that the factual findings of the state court are correct unless the petitioner can rebut this presumption by clear and convincing evidence. *Smallwood v. Gibson,* 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert denied,* 531 U.S. 833 (2000).

15. To justify federal habeas relief, the decision of the state court must not only have been erroneous, but also unreasonable. *Williams v. Taylor,* 529 U.S. 362, 411 (2000); *Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir. 2004). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." *Thompson v. Oklahoma,* 202 F.3d 283 (Table, Text in Westlaw), No. 98-7158, 2000 WL 14404 at *6 (10th Cir. Jan 10, 2000), *cert denied,* 530 U.S. 1265 (2000).

16. Harris suggests that the decision of the state court cannot be an adjudication on the merits because the state court never clearly explained its reasoning nor made any significant recognition of federal law. Harris's argument is faulty. No citation to federal law or controlling Supreme Court precedent is required to have an adjudication on the merits.

> A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Avoiding these pitfalls does not require citation of our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Early v. Packer,* 537 U.S. 3, 8 (2002). This Court finds that Harris's claims were adjudicated on the merits by the state courts.

17. Harris also argues that the state court decision was contrary to federal constitutional law because it failed to apply the correct controlling authority, and failed to apply established legal principles of the Supreme Court. Specifically, Harris contends that the state court misapplied the prejudice standard of *Strickland v. Washington,* 466 U.S. 668 (1994), and unreasonably required him to show that, but for counsel's errors, he would have been acquitted, and failed to recognize that counsel fell below an objection standard of reasonableness. Again, Harris is wrong. Even a cursory review of the Ninth Judicial District Court's Findings of Fact and Conclusions of Law [Doc. No. 10, Ex. U] shows that the state district court applied the correct standard in analyzing Harris's claims of ineffective assistance of counsel.

### INEFFECTIVE ASSISTANCE OF COUNSEL

18. Clearly established federal law holds that to establish an ineffective assistance of counsel claim Harris must demonstrate that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Harris must show that his defense counsel's performance was not simply wrong, but was completely unreasonable. *Gonzales v. McKune*, 247 F.3d 1066, 1072 (10th Cir. 2001), *vacated in part on rehearing en banc,* 279 F.3d 922 (10th Cir. 2002). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..." *Strickland v. Washington,* 466 U.S. at 689.

19. The second prong of establishing an ineffective assistance of counsel claim requires Harris to establish that but for his attorney's errors, there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

<u>Claim One - Failure to Investigate Underlying Facts</u>

20.  Harris's first contention is that his attorney failed to pursue an adequate pretrial investigation.  Specifically, he alleges that his trial counsel did not employ the Public Defender investigator to interview any witnesses, did not interview any prosecution witnesses, did not investigate two of the three defense witnesses disclosed in the witness list, and did not attempt to contact eight potential witnesses whose identities were disclosed in the police report and who were available to testify in support of Harris's theory of the case.  Harris claims that trial counsel may have been able to find witnesses that would have corroborated his testimony that he was too drunk on the night of the offense to form the specific intent to kill or that he was provoked by hours of relentless racial epithets. Harris's claim is speculative and he has failed to show how he was prejudiced by such alleged errors.

21. Following a three-day evidentiary hearing on Harris's Petition for Habeas Corpus filed in the Ninth Judicial Court in the State of New Mexico,  the state district court thoroughly addressed and then rejected Harris's claim that his trial counsel was ineffective for failing to pursue an adequate pretrial investigation. [Doc. No. 10, Ex. U].  The court found that trial counsel utilized an investigator employed by the Public Defender's Office, arranged to have Harris submit to a forensic evaluation several months prior to trial, had Harris submit to a polygraph examination, met weekly with Harris and numerous times with Harris's wife and parents, and reviewed the Clovis Police Department felony case file with Harris.  *Id.*

22.  The Court concludes that the state court's adjudication of this claim did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light

8

of the evidence presented in the state court proceedings. Therefore, the Court recommends that Harris's claim that his trial counsel was ineffective by failing to investigate the underlying facts of his case be dismissed with prejudice.

### Claim Two - Failure to Present Witnesses To Support Defense

23. Harris's second contention relating to his ineffective assistance of counsel claim is that his trial counsel failed to present witnesses to support his intoxication defense. Harris alleges that the jury never learned the full extent of the drugs and alcohol he consumed on the day prior to the stabbing and that he was on the verge of alcohol poisoning. He complains that his trial counsel did not present a single disinterested witness to support his claim that he was too intoxicated at the time of the stabbing to form an intent to kill. There is nothing in the record to suggest that additional witnesses existed that could testify in support of this claim.

24. As with Harris's claim that trial counsel was ineffective by failing to investigate, the state district court thoroughly addressed and then rejected Harris's claim that his trial counsel was ineffective by failing to present witnesses to support his intoxication defense. Harris spent the day prior to the stabbing drinking with the victim, McKinney, and McDowell. Both McKinney and McDowell testified at the trial. After going home and sleeping for several hours, Harris woke up and spoke to his wife, Lenora Harris, who drove him to McDowell's house where the stabbing occurred. Both Harris's wife and McDowell's wife testified at the trial.

25. At the evidentiary hearing addressing Harris's state habeas corpus petition, the testimony of the police officials was that no odor of alcohol or signs of intoxication were noted on Harris, and that Harris would not have been interviewed if officials had noted any odor of alcohol or signs of intoxication. [Doc. No. 10, Ex, U]. Furthermore, Harris's half-brothers testified that while they

9

observed Harris during the time Harris was being taken into custody and arrest, neither of them got closer than 10 - 15 feet from Harris and never spoke to him at the scene. *Id.*

26. Again, the state district court thoroughly addressed this claim and found that Harris's counsel exercised sound trial strategy in not calling the law enforcement officials who did not note an odor of alcohol or signs of intoxication on Harris and in not calling either of Harris's half-brothers who both had felony convictions.

27. The Court concludes that the state court's adjudication of this issue did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the Court recommends that Harris's claim that his counsel was ineffective by failing to present witnesses to support his defense be dismissed with prejudice.

<u>Claim Three - Failure To Present Expert Testimony To Support Intoxication Defense</u>

28. Harris next alleges that his trial counsel was ineffective when he failed to present expert testimony that, at the time of the offense, Harris was too intoxicated to form an intent to kill. Harris argues that the testimony at the evidentiary hearing in the state district court showed that with all the alcohol and drugs ingested by Harris he still may have been intoxicated at the time of the killing. Assuming Harris was intoxicated, the fact that he may have been intoxicated at the time of the killing is not enough to support an intoxication defense. There must be evidence of the continued effect of the intoxication and whether it affected Harris's ability to form a specific intent to kill. *State v. Romero,* 125 N.M. 161, 168, 948 P.2d 119, 125 (App. 1998).

29. Under New Mexico law, when there is evidence of intoxication at or near the time of a crime, the defendant does not need to present specific evidence as to what degree the intoxicant effected him as typically this evidence will come from witnesses who observed the defendant's behavior and demeanor at or near the time of the crime. *State v. Romero*, 125 N.M. 161, 958 P.2d 119 (App. 1998). "However, as the passage of time lengthens between intoxication and the commission of the crime, the greater the likelihood that additional evidence will be required to assist the jury and avoid rank speculation." *Romero,* 125 N.M. at 168, 958 P.2d at 126. In this case, the record is clear that Harris consumed alcohol between approximately 11:30 a.m. and 5:00 p.m. on October 3, 2001. The stabbing occurred at approximately 1:30 a.m. on October 4, 2001, some eight and one-half hours later.

30. Also, Harris's trial counsel did retain an expert to evaluate Harris's ability to form specific intent at the time of the stabbing, Richard T. Fink, Ph.D. [Doc. No. 17, Ex H]. Dr. Fink relied on Harris's admissions to formulate his report. *Id.* After evaluating Harris, Dr. Fink determined that Harris's level of intoxication was "not high enough to have prevented him from forming specific intent. Mr. Harris's behavior at the time indicates he was forming intent for some things." *Id.* Based on this report, Harris's trial counsel chose to utilize the State's expert witness to introduce the absorption and elimination of alcohol rather than Dr. Fink. The state district court concluded that Harris's trial counsel engaged in sound trial strategy when he chose to utilize the State's expert and not to engage in a battle of experts. [Doc. No. 10, Ex. U].

31. During the evidentiary hearing, Harris's expert, Dr. Edward Reyes, testified about Harris's blood alcohol content, but never testified about Harris's ability to form the specific intent necessary for a first degree murder charge. After hearing Dr. Reyes' testimony, the state district court concluded:

> Dr. Reyes' testimony is speculation that Petitioner could have been at .823 BAC at the time of the incident when he stopped consuming alcohol some eight hours earlier, but the victim - who continued to consume alcohol for more than six hours after Petitioner - had a BAC of .19 at death.

[Doc. No. 10, Ex. U].

32. Furthermore, the state court found that had counsel presented expert testimony at trial regarding Harris's inability to form an intent to kill, such testimony would have directly contradicted Harris's own trial testimony that demonstrated his "ability to recall, direct his own actions in arming himself, identify people and give a coherent statement to police, all conduct directly indicating he was forming specific intent." [Doc. No. 10, Ex. U].

33. Harris's trial counsel's actions were not objectively unreasonable. Therefore, this Court concludes that the state court's adjudication of this issue did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the Court recommends that Harris's claim that his counsel was ineffective by failing to present expert testimony to support his intoxication defense be dismissed with prejudice.

### Claim Four - Failure To Discover and Disclose Conflict of Interest

34. Harris argues that his trial counsel was ineffective because he failed to discover and disclose a potential conflict of interest which created an appearance of impropriety and may have

12

adversely affected his trial. This possible conflict of interest involved Cash McKinney, a witness who testified for the prosecution. Harris alleges that a conflict arose because the New Mexico Public Defender Department, the employer of Harris's counsel of record, had represented McKinney in a criminal proceeding some ten years prior. At the evidentiary hearing on Harris's state habeas corpus petition, Harris's trial counsel testified that he did not know McKinney was a former client of the New Mexico Public Defender or that McKinney had been convicted of any felony. [Doc. No. 10, Ex U].

35. To establish a claim of ineffective assistance of counsel based on a conflict of interest, Harris must show that "a conflict of interest actually affected the adequacy of his representation . . ." *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980) (citation omitted). Harris must demonstrate that his attorney "actively represented conflicting interests [to establish] the constitutional predicate for his claim of ineffective assistance." *Id.* at 350.

36. Harris's allegations that his trial counsel "never discovered or disclosed the fact that he was operating under a potential conflict of interest which created an appearance of impropriety" and that such conflict "may have adversely affected trial counsel's performance" to his detriment do not suffice to support Harris's contentions because an actual conflict of interest cannot be demonstrated by the mere possibility of conflict. *Cuyler*, 446 U.S. at 350. Nor may such a conflict be shown by "the mere appearance of impropriety . . ." *Pool v. Armontrout*, 852 F.2d 372, 375 (8th Cir. 1988). Without a showing of actual conflicting interests, an alleged conflict is hypothetical. *U.S. v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998) ("the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party") (citation omitted).

37. The Court concludes that the state court's adjudication of this issue did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the court recommends dismissal of the ineffective assistance counsel of claim based on a conflict of interest.

### Claim Five - Failure to Impeach Prosecution Witnesses

38. Harris contends that his counsel was ineffective when he failed to impeach the testimony of two prosecution witnesses. Harris suggests that because these two witnesses, Cash McKinney and Sam McDowell, admitted drinking "some" alcohol on the day of the offense and denied that they had ever heard the alleged racial slurs made by the victim to Harris that their testimony should have been impeached by their prior convictions and long-standing use of drugs and alcohol. Harris believes that Cash McKinney, specifically, should have been impeached with his prior felony conviction for distribution of marijuana, his long-standing abuse of marijuana, amphetamines and cocaine, his probation violations, and his close personal relationship with decedent's wife. However, Harris fails to make any showing of how this alleged failure of his trial counsel prejudiced him.

39. In the Findings of Fact and Conclusion of Law filed by the state district court following a three-day evidentiary hearing, the state court found that Harris's counsel did impeach the State's witnesses by demonstrating bias, motive for untruthfulness, memory, ability to observe, and alcohol consumption. [Doc. No. 10, Ex. U]. Specifically, the state court concluded that trial counsel did impeach McKinney with bias, jealousy, alcohol consumption, and racial slurs allegedly directed toward Harris. *Id.*

40. The Court concludes that the state court's adjudication of this issue did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the Court recommends that Harris's claim that his counsel was ineffective by failing to impeach prosecution witnesses be dismissed with prejudice.

Claim Six - Failure to Pursue Pretrial Motions

41. Harris asserts that his trial counsel was ineffective because he failed to pursue the appropriate pretrial motions. These motions include a motion for sanctions or, in the alternative, a jury instruction based on the State's failure to preserve evidence of Harris's intoxication at the time of the stabbing through breath and/or blood tests, a motion based on the racial disparities of the jury, and a motion to assert Harris's privilege to prevent his wife from being called as a witness.

42. As to the claim that his trial counsel failed to file a motion for sanctions based on the State's failure to preserve evidence of Harris's intoxication at the time of the stabbing, Respondent asserts that there was no reason to gather or keep evidence of Harris's intoxication because no law enforcement official thought that Harris was under the influence of drugs or alcohol. This is supported by the testimony at the evidentiary hearing in the state district court that no odor of alcohol or signs of intoxication were noted on Harris and furthermore, that Harris would not have been interviewed if officials had noted any odor of alcohol or signs of intoxication. [Doc. No. 10, Ex. U]. The police interview of Harris was recorded and played for the jury in its entirety. The state district court found that Harris spoke coherently throughout the interview and remembered details of the day prior to consuming alcohol, during the consumption, after sleeping, and after stabbing

Smith. [Doc. No. 10, Ex. U]. Harris makes no argument that he was prejudiced by trial counsel's failure to file such a motion.

43. As to his claim that his trial counsel was ineffective when he failed to object to the racial disparity in the composition of the jury, Harris failed to produced any evidence that a motion challenging the racial composition of the jury would have been meritorious or that the failure of his counsel to file such a motion prejudiced his defense.

44. The Sixth Amendment grants a defendant the right to a jury pool comprised of a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). "To establish a prima facie violation of the Sixth Amendment-based-fair-cross-section requirement, the defendant must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process." *U.S. v. Edwards*, 69 F.3d 419, 437 (10th Cir.1995) (quoting *Duren v. Missouri*, 439 U.S. 357, 364(1979)). Harris has failed to make any such showing.

45. Finally, with respect to Harris's claim that his trial counsel should have filed a motion to prevent Harris's wife from being called as a witness at trial, Harris fails to make any showing as to how he was prejudiced by his wife testifying at trial. As the Respondent correctly points out, there was no basis for asserting spousal privilege as the only possible privileged communication would be a statement made to her immediately after the killing that he had stabbed the victim and that privilege was waived when he told the police that same thing.

46. The Court concludes that the state court's adjudication of this issue did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the Court recommends that Harris's claim that his trial counsel was ineffective in failing to pursue certain pretrial motions be dismissed with prejudice.

<u>Claim Seven - Cumulative Effect of Counsel's Errors</u>

47. Finally, Harris charges that the cumulative effect of trial counsel's "multiple errors" rendered the "adversarial process presumptively unreliable, producing a trial which was far different than the trial Mr. Harris could have had with the assistance of reasonably competent defense counsel. Therefore, the cumulative effect of trial counsel's errors must undermine this Court's confidence in the jury's verdict of first degree murder."

48. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera,* 900 F.2d 1462, 1470 (10th Cir. 1990). However, "[c]umulative error analysis . . . does not apply to the cumulative effect of non-errors." *Moore v. Reynolds,* 153 F.3d 1086, 113 (10th Cir. 1998). Because Harris has not demonstrated any error, there is no basis for finding that he is entitled to relief on the basis of cumulative error.

49. The Court concludes that the state court's adjudication of this issue did not result in a decision that was contrary to or involved an unreasonable application of clearly established federal law, and that the state decision was not based on any unreasonable determination of the facts in light

of the evidence presented in the state court proceedings.  Therefore, the Court recommends that Harris's claim that his counsel was ineffective due to the cumulative effect of counsel's errors be dismissed with prejudice.

## CONCLUSION

The Court recommends that the Petitioner's Application for a Writ of Habeas Corpus be DENIED because the Petitioner has failed to establish that he is in custody pursuant to a State court judgement in violation of the Constitution of the United States.

## NOTIFICATION

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN TEN (10) DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the United States District Court, Pete V. Domenici United States Courthouse, 333 Lomas Blvd. NW, Albuquerque, NM 87102,  pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

_____
**Alan C. Torgerson**
**UNITED STATES MAGISTRATE JUDGE**